LorinGt, J.,
delivered the opinion of the court:
Under the third section of the Act February 26, ISOS', (2 Stat. L., 203,) if a seaman is discharged with his o,wn consent in a foreign country, the master is required to pay to the consul three months’ extra wages; of which two months’ wages are to be paid to the discharged seaman on his engagement on board of any vessel to return to this country, and the other month’s wages are to be retained toward creating a fund for the payment of passages of seamen from abroad to this-country and for the relief of destitute seamen in foreign ports.
The language of the section cited -would seem to confine its provisions to American seamen, and that may have been its purpose; but subsequent legislation provided for the employment of foreign seamen in our vessels, and our courts have long held that seamen of foreign birth, sailing in our vessels, were within the provisions of the section referred to. That section requires that, when seamen are discharged in a foreign port, the captain *463 shall produce his certified list of his crew to the consul, and three months’ wages shall be paid on the discharge of such seaman designated on the list as an American seaman. And it was contended by the learned counsel for the petitioner that as the seamen discharged in this case were not so designated in the captain’s list, the requirement of the three months’ extra wages was illegal. But the omission of any such designation was the fault of the master, and in him a non-compliance with the law; and he was the agent of the owners, who are petitioners here, and his acts and defaults in his official capacity were-theirs, and they cannot take advantage of his failure to comply Avith the statute; and it is manifest that if such a defense Avere admissible, the masters of vessels might always omit such designation, and thus evade the statute and defeat its purposes.
Then the shipping-articles contained a provision in these-words: u It is further agreed that the undersigned are to be discharged in Liverpool, if mutually consented to between the master and seamen.”
It has always been held that the words “ foreign country”' in the section cited referred to a port or place abroad intermediate between the termini of the voyage; so that, if a seaman shipped here for a voyage to Liverpool, and was discharged there, his case would not be within the provisions of the statute,, and he would be entitled to his discharge there, and haA'e no right to further employment in the vessel by the terms of his contract and because it had expired; and in such case no extra wages would be payable for him. And the learned counsel for the petitioner contended that, by the provisions in the shipping-articles relating to the discharge in Liverpool, this was such a case; but we think it is not, and that Liverpool was, by the shipping-articles, an intermediate port in the voyage for which the seamen contracted.
The Aroyage is thus described in the finding of the facts : “ From the port of San Francisco to Liverpool, thence to one or more foreign ports, and back to a final port of discharge in the United States; term not to exceed twenty-four calendar months.”
This describes one entire voyage of two years’ duration, and from the United States to a foreign port or ports and back to this country, and a final port of discharge here. And there was no place or time in such voyage at which the seamen cohid. *464 leave the vessel or be deprived of tbeir employment in .it, within or by force of the terms of the shipping-articles, br without a new and distinct contract, resting on a new assent or agreement between the master and seamen. Both parties, therefore, were bound for the entire voyage described in the shipping-articles at their date. And therefore Liverpool or any other foreign port was, by the contract in the shipping-articles, only an intermediate port in the voyage contracted for.
And it is necessarily and always has been the law that a seaman shipped here for a voyage out and home again might be discharged abroad by the mutual consent of-the master and seamen, for both are capable and free to contract; and it is precisely for a discharge so made that the' third section of the statute of 1803 provides, so that the agreement in the shipping-articles relating to the discharge of the seamen in Liverpool added nothing to the provisions of the law and was of no effect whatever as to the right of discharge there or at any other foreign port; for it provided only for that which was perfectly competent to the parties without it. '
But under the act of 1803, on the discharge of a seaman, with his consent, in a foreign country, three months’ extra wages are to be paid to the consul; and it is doubtless true that the parties intended the provision in the shipping-articles to be a stipulation that if, under it, the seamen took their discharge in Liverpool, they would waive the payment of the two months’ extra wages the statute provided for them ; for they did this when discharged in Liverpool, and they had a right to do it. And therefore the consul required and the captain paid only the one month’s wages required by-the statute to be retained for the humane purposes specified in it.
And it is certain that though the discharged seamen- might waive the benefit accruing to them under the statute, they could not waive the payment of the one month’s extra wages which under the statute accrued to the United States for the purposes referred to, and this the consul was bound to require and the captain was bound to pay, and it was all that was required or paid. And we think this merely fulfilled the statute in the very case it provides for, that of the discharge of, the seamen, with their consent, in a foreign country at intermediate ports in the voyage.
The judgment of the court is that the petition be dismissed.